UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D2 HOLDINGS LLC, <br><br> Plaintiff, <br><br> v. <br><br> MRC II DISTRIBUTION COMPANY, L.P. <br><br> and <br><br> INTERNATIONAL GAMES TECHNOLOGY, INC., <br><br> Defendants. | Civil Action No. <br><br> COMPLAINT <br> JURY TRIAL DEMANDED |

Plaintiff D2 Holdings LLC ("D2" or "Plaintiff"), by and through undersigned counsel, alleges as follows, with knowledge as to its own actions, and upon information and belief as to all other matters:

## PARTIES

1. Plaintiff D2 is a Massachusetts limited liability company with its principal place of business at 90 Quincy Shore Drive, Suite 403, Quincy, Massachusetts 02171.

2. Defendant MRC II Distribution Company L.P. ("MRC") is a Delaware limited partnership with a principal place of business at 1800 Century Park East, 10th Floor Los Angeles, California 90067.

3. Upon information and belief, Defendant International Games Technology, Inc. ("IGT") is a Nevada corporation with a principal place of business located at 9295 Prototype Drive, Reno, Nevada 89521.

4. On information and belief, at all relevant times, Defendants have been, and presently are, regularly doing business in the Commonwealth of Massachusetts, and in this judicial district.

## JURISDICTION AND VENUE

5. This action arises under the federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, and related state statutes and common law doctrines. This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Defendants, because Defendants did or do business in Massachusetts, and a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) insofar as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PLAINTIFF'S BUSINESS AND TRADEMARKS

8. D2 is a limited liability company used to license and manage the intellectual property created by David E. Weischadle II and Douglas E. Weischadle

9. D2 is the current owner of the United States trademark registration No. 3,642,647 for HOUSE OF CARDS in word form (the "HOUSE OF CARDS Mark"), which was registered on June 23, 2009, with a first use claimed since September 11, 2007. The HOUSE OF CARDS Mark is for entertainment goods and services in the nature of an on-going special variety, news, music or comedy show featuring games of chance and poker, broadcast over television, satellite, audio, and video media; entertainment in the nature of visual and audio performances, and musical, variety, news and comedy shows; entertainment services, namely, a multimedia program series featuring comedy, action and adventure distributed via various platforms across

multiple forms of transmission media; and entertainment services, namely, providing an on-going radio program in the field of gaming and poker.

10. On or about December 18, 2015, D2's predecessor-in-interest filed another application for the HOUSE OF CARDS Mark (No. 86/853,891, currently pending) for hats, tee shirts, and bumper stickers. The pending application has a first use claimed for these items since May 20, 2008.

11. Granary Way Media LLC ("GWM") is a radio, television, and film production company with its principal place of business at 6 Ribsam Street, Trenton, New Jersey 08619. GWM is the exclusive licensee of D2 for the HOUSE OF CARDS Mark for use with GWM's entertainment program entitled "House of Cards," which was created and debuted on September 11, 2007.

12. GWM, D2, and its predecessors in interest have spent, and continue to spend, significant amounts of time and money promoting the HOUSE OF CARDS Mark. GWM's entertainment program bearing the HOUSE OF CARDS Mark is currently nationally syndicated on more than 100 broadcast radio stations in the United States via the Yahoo! Sports Radio Network, which has approximately five million listeners nationwide. GWM has offered, for sale to the public, ancillary products related to their entertainment program bearing the HOUSE OF CARDS Mark in the form of hats, shirts, mugs and other products of various types since May of 2008. GWM has also promoted the entertainment program bearing the HOUSE OF CARDS Mark via various social media outlets since 2010. The website operated by GWM in conjunction with the entertainment program bearing the HOUSE OF CARDS Mark clearly states the mark is federally registered and owned by Plaintiff and its licensee. As a result of the aforementioned

10226538.1

activities, D2, its predecessors in interest, and its licensee have built substantial goodwill in the HOUSE OF CARDS Mark, which has become famous.

13. D2's HOUSE OF CARDS Mark is famous, inherently distinctive, and/or has acquired distinctiveness, represents valuable goodwill, has gained a reputation for quality belonging exclusively to D2 and its licensee, and is widely recognized by the trade and the general consuming public of the United States as a designation of source for GWM's products and services.

14. D2's U.S. Trademark No. 3,642,647 for the HOUSE OF CARDS Mark is incontestable pursuant to 15 U.S.C. § 1065.

15. Pursuant to 15 U.S.C. § 1115, D2's registration is evidence of the validity of the HOUSE OF CARDS Mark, of D2's ownership of the HOUSE OF CARDS Mark, and of D2's exclusive right to use and license the HOUSE OF CARDS Mark throughout the United States.

## DEFENDANTS' ACTIVITIES

16. On information and belief, MRC is an independent film and television studio that distributes the critically acclaimed Netflix television series "House of Cards," which debuted in the United States on February 1, 2013.

17. The House of Cards television series is a political drama set in present-day Washington that tells the story of Frank Underwood (played by Kevin Spacey), a Democrat from South Carolina's 5th congressional district and House Majority Whip who, after being passed over for appointment as Secretary of State, initiates an elaborate plan to get himself into a position of greater power, aided by his wife, Claire Underwood (played by Robin Wright).

18. Upon information and belief, during the course of developing the television series, MRC attempted to obtain from the United States Patent and Trademark Office ("PTO") a

4

10226538.1

registration for the mark HOUSE OF CARDS, but failed to do so because of the prior registration of the HOUSE OF CARDS Mark by D2's predecessor-in-interest.

19. On or about April 15, 2011, MRC filed Application No. 85/296,961 for HOUSE OF CARDS in word form for the television series of that name.

20. MRC's Application No. 85/296,961 was rejected because of the prior registration of D2's predecessor-in-interest. As a result, MRC abandoned its application on January 30, 2012.

21. On or about September 12, 2014, MRC filed Application No. 86/393,463 for HOUSE OF CARDS in word form for the TV series.

22. MRC's Application No. 86/393,463 was again rejected on the basis of the prior registration of D2's predecessor-in-interest. After being rejected, MRC again abandoned the application on August 1, 2015.

23. Despite its two prior rejections, MRC filed Application No. 86/739,654 on August 27, 2015 for HOUSE OF CARDS in word form for five classes of goods, including computer game programs, calendars, posters, tote bags, mugs, tee shirts, and other items. The same day, MRC also filed Application No. 86/739,656 for HOUSE OF CARDS in design form seeking a mark for the same goods as in the co-pending '654 application.

24. On or about December 14, 2015, the PTO issued an Office Action once again refusing MRC's applications for registration based on the prior registration by D2's predecessors-in-interest of the HOUSE OF CARDS Mark.

25. Despite MRC's repeated failure to obtain a trademark registration for the HOUSE OF CARDS mark because of the prior existing registration of the HOUSE OF CARDS Mark,

10226538.1

MRC has purportedly licensed the HOUSE OF CARDS mark to other entities, thus infringing upon Plaintiff's rights in the HOUSE OF CARDS Mark.

26. For example, MRC has purportedly licensed the HOUSE OF CARDS mark to IGT for casino games and slot machines, without the consent of D2.

27. In 2015, IGT announced at the 2015 Global Gaming Expo that it was introducing two new slot games called "House of Cards Power and Money" and "House of Cards Welcome to Washington," which are slated for placement in casinos in the first quarter of 2016. Upon information and belief, these new slot games have already been installed in various casinos and have been already or will be installed at casinos in Massachusetts as seen below:



28. On or about February 10, 2016, IGT launched on IGT's social gaming app, DoubleDown Casino, the House of Cards Slots. In its press release, IGT claimed that it was "bring[ing] another famed licensed title to DoubleDown Casino players" and in its tweet announcing the launch included an image identifying the trademark as belonging to MRC.



29. In addition to purportedly licensing the HOUSE OF CARDS mark for casino games, MRC has also purportedly licensed, without the consent of D2, the HOUSE OF CARDS mark for merchandise such as tee shirts and hats, which can be purchased at retailers in Massachusetts and across the country such as Target, Newbury Comics, and Amazon. An example of the merchandise – including MRC's purported trademark claim – is below:



30. Defendants' unauthorized use of the HOUSE OF CARDS Mark makes it highly likely, if not inevitable, that members of the trade and general public will be confused and assume, incorrectly, that the HOUSE OF CARDS Mark is owned by MRC, or that there is an affiliation with D2, or that Plaintiff has sponsored, endorsed, or approved these products.

31. Plaintiff's first use of its HOUSE OF CARDS Mark was nearly four years before MRC first sought to register the HOUSE OF CARDS mark. MRC's applications have been repeatedly rejected by the PTO because of Plaintiff's Mark and its priority over Defendants' use of the HOUSE OF CARDS mark.

32. Despite the repeated rejections by the PTO of MRC's efforts to register the HOUSE OF CARDS mark, MRC continues to act as though it owns the HOUSE OF CARDS Mark by engaging in unauthorized licensing and use of the Mark without D2's consent.

33. D2's predecessor-in-interest wrote MRC on October 19, 2015, notifying MRC of its prior and superior rights in the HOUSE OF CARDS Mark, and inviting a discussion of possible resolution of the matter. Neither D2 nor its predecessor-in-interest has received a substantive response from MRC despite repeated attempts to discuss the matter.

34. Neither MRC nor IGT ceased their infringing use of the HOUSE OF CARDS Mark, however, on information and belief MRC continues to license the HOUSE OF CARDS mark to third parties without the consent of D2, despite MRC's knowledge of D2's prior and superior rights in the Mark.

35. Defendant, by their acts complained of herein, have infringed Plaintiff's HOUSE OF CARDS Mark, diluted the unique commercial impression of the HOUSE OF CARDS Mark, unfairly competed with D2 in the marketplace, and otherwise improperly used D2's HOUSE OF

10226538.1

CARDS Mark, which is not connected with Defendants, authorized, approved, licensed, produced or sponsored by Plaintiff.

## CLAIMS FOR RELIEF

### COUNT I (BOTH DEFENDANTS)
### INFRINGEMENT OF A REGISTERED TRADEMARK (FEDERAL)

36. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 35 as if set forth herein.

37. Defendants' unlawful and improper actions, as set forth above, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association, or sponsorship of goods and services bearing the HOUSE OF CARDS mark, and to falsely mislead consumers into believing that the HOUSE OF CARDS Mark is owned or licensed by MRC or IGT and that Defendants' use of the HOUSE OF CARDS Mark is affiliated or connected with, or approved by, Plaintiff.

38. Defendants' use of the HOUSE OF CARDS mark constitutes infringement of Plaintiff's registered trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114.

39. Defendants' acts of infringement have caused injury to Plaintiff.

40. Defendants have engaged in these activities willfully.

41. Defendants' acts of infringement, unless enjoined by this Court, will continue to cause Plaintiff irreparable damage, loss and injury, for which Plaintiff has no adequate remedy at law.

42. Plaintiff has suffered damages from Defendants' acts of infringement in an amount to be determined at trial.

10226538.1

## COUNT II (BOTH DEFENDANTS)
## TRADEMARK DILUTION (FEDERAL)

43. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 42 as if set forth herein.

44. Plaintiff's HOUSE OF CARDS Mark is famous and distinctive among the trade and the general consuming public in the United States, and has been famous since long before Defendants commenced use of the HOUSE OF CARDS mark.

45. Defendants' use of the HOUSE OF CARDS mark is likely to dilute the distinctive quality of Plaintiff's HOUSE OF CARDS Mark in violation of 15 U.S.C. § 1125(c).

46. Defendants' acts described above are unlawful and constitute violations of the federal anti-dilution statute, 15 U.S.C. § 1125(c).

47. Defendants' acts of dilution have caused Plaintiff injury.

48. Defendants have engaged in these activities willfully.

49. Defendants' acts have caused substantial and irreparable damage and injury to Plaintiff and in particular to its valuable goodwill in, and the distinctive quality of, Plaintiff's Mark. Unless these acts are enjoined by this Court, Defendants will continue to cause substantial and irreparable damage and injury to Plaintiff.

50. Plaintiff has suffered damages from Defendants' acts of infringement in an amount to be determined at trial.

## COUNT III (BOTH DEFENDANTS)
## TRADEMARK INFRINGEMENT (COMMON LAW)

51. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 50 as if set forth herein.

10226538.1

52. Plaintiff owns all right, title, and interest in and to the HOUSE OF CARDS Mark as described above, including all common law rights in the HOUSE OF CARDS Mark.

53. Defendants' use of the HOUSE OF CARDS mark is unauthorized, and is likely to cause confusion or mistake among the trade and consumers as to the source, origin, affiliation, association, or sponsorship of goods and services bearing the HOUSE OF CARDS mark, and to falsely mislead the trade and consumers into believing that the HOUSE OF CARDS Mark is owned by Defendants and that Defendants' use of the HOUSE OF CARDS Mark is affiliated or connected with, or approved by, Plaintiff.

54. By the acts described above, Defendants have engaged in trademark infringement in violation of the common law of the Commonwealth of Massachusetts.

55. Defendants' wrongful acts will continue unless and until enjoined by this Court.

56. Defendants' acts have caused substantial and irreparable damage and injury to Plaintiff and in particular to its valuable goodwill in, and the distinctive quality of, Plaintiff's Mark. Unless these acts are enjoined by this Court, they will continue to cause substantial and irreparable damage and injury to Plaintiff.

57. Plaintiff is thus entitled to an injunction under the common law of the Commonwealth of Massachusetts.

58. Plaintiff has suffered damages from Defendants' acts of infringement in an amount to be determined at trial.

### COUNT IV (BOTH DEFENDANTS)
### UNFAIR COMPETITION UNDER MASSACHUSETTS
### GENERAL LAWS CHAPTER 93A § 11

59. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 58 as if set forth herein.

10226538.1

60. Defendants have advertised, offered, licensed, and sold products and services in Massachusetts bearing the HOUSE OF CARDS mark without the authorization of Plaintiff.

61. Defendants' acts have caused and are likely to continue to cause confusion or mistake among the trade and the public as to an affiliation, connection, or association of the HOUSE OF CARDS mark with Plaintiff, and/or as to the origin, sponsorship, or approval of the products bearing the HOUSE OF CARDS mark by Plaintiff.

62. Defendants' acts constitute misappropriation and misuse of the HOUSE OF CARDS Mark, false advertising, and unjust enrichment, in violation of Massachusetts General Laws, Chapter 93A § 11.

63. Defendants' wrongful acts will continue unless and until enjoined by this Court.

64. Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiff.

65. Plaintiff is thus entitled to an injunction pursuant to the common law of the Commonwealth of Massachusetts.

66. Plaintiff has suffered damages from Defendants' acts of infringement in an amount to be determined at trial.

### COUNT V (BOTH DEFENDANTS)
### UNFAIR COMPETITION (COMMON LAW)

67. Plaintiff repeats and re-alleges the allegations of paragraph 1 through 66 as if set forth herein.

68. Defendants have advertised, offered, licensed, and sold products and services bearing the HOUSE OF CARDS mark without the authorization of Plaintiff, thereby improperly trading upon Plaintiff's goodwill and valuable rights in and to its HOUSE OF CARDS Mark.

10226538.1

69. Defendants committed the above alleged acts willfully, and in conscious disregard of Plaintiff's rights under the common law of the Commonwealth of Massachusetts.

70. By the acts described above, Defendants have engaged in unfair competition in violation of the common law of the Commonwealth of Massachusetts.

71. Defendants' wrongful acts will continue unless and until enjoined by this Court.

72. Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.

73. Plaintiff is thus entitled to an injunction pursuant to the common law of the Commonwealth of Massachusetts.

74. Plaintiff has suffered damages from Defendants' acts of infringement in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff D2 Holdings, LLC demands the following relief against Defendants MRC II Distribution Company L.P. and International Games Technology, Inc.:

A. For a preliminary and permanent injunction (the "Order") against Defendants and their affiliates, officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the Order by personal service or otherwise:

1. Restraining and enjoining use of the HOUSE OF CARDS Mark, or any other reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation of the HOUSE OF CARDS Mark, or any other reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation of the HOUSE OF CARDS Mark suggesting in

10226538.1

any way that Defendants and/or their activities, products or services originate from, are affiliated with, or authorized by Plaintiff, or that Plaintiff and its activities, products or services are affiliated in any way with Defendants.

2. Restraining and enjoining the use of any other mark, term, slogan, tagline, or phrase which suggests or tends to suggest in any way that Defendants or their activities or products originate from, are affiliated with, or authorized by Plaintiff, or that Plaintiff and its activities or products are affiliated in any way with Defendants.

3. Restraining and enjoining the use, in connection with any goods or services, of any false or deceptive designation, description or representation, whether by words or symbols, which suggest or imply any relationship with Plaintiff or give Defendants an unfair competitive advantage in the marketplace.

4. Restraining and enjoining Defendants from diluting the strength of the HOUSE OF CARDS Mark.

5. Restraining and enjoining Defendants from engaging in any acts of common law trademark infringement, unfair competition, or dilution that would damage or injure Plaintiff.

6. Restraining and enjoining Defendants from inducing, encouraging, instigating, aiding, abetting, or contributing to any third party usage of the HOUSE OF CARDS Mark.

B. For an award of Plaintiff's actual damages in an amount to be determined at trial.

10226538.1

C.  For an award of treble Plaintiff's actual damages in accordance with 15 U.S.C. §1117 and the applicable laws of the Commonwealth of Massachusetts as a result of Defendant's knowing and willful conduct.

D.  For an award of punitive damages because of Defendants' knowing, willful, and deliberate bad faith acts of unfair competition, in an amount to be determined at trial.

E.  For an award of attorneys' fees and disbursements incurred by Plaintiff in this action.

F.  For an award of costs of this action.

G.  That in accordance with 15 U.S.C. § 1118, all materials, packaging, labels, tags, pamphlets, brochures, signs, sales literature, stationery, advertisements, billboards, banners, posters, documents, digital coding or digital representations, and the like (the "Marketing and Promotional Material") in the possession or under the control of Defendants and their affiliates, and all plates, molds, matrices, negatives, masters, and other means of making the Marketing and Promotional Material, which might, if used, violate the Order herein granted, be delivered up and destroyed as the Court shall direct.

H.  That in accordance with 15 U.S.C. § 1116, Defendants file with the Court and serve on Counsel for Plaintiff within thirty (30) days after service on Defendants of such Order, or within such extended period as this Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the Order.

I.  For an award of such other and further relief as the Court may deem equitable and proper.

**PLAINTIFF SEEKS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

10226538.1

Respectfully submitted,

D2 HOLDINGS, LLC

By its Attorneys
PRETI FLAHERTY BELIVEAU & PACHIOS,
PLLP

Dated: March 3, 2016

*/s/ William C. Saturley*
William C. Saturley (BBO 442800)
60 State Street, Suite 1100
Boston, MA 02109
617-226-3857
wsaturley@preti.com

16

10226538.1